May it please the Court, my name is Mary Pogalis. I represent the appellant, Mr. Trejo-Ramirez, in this appeal. Counsel, on that juror who said oui instead of yes, my first thought on reading that is you just being cute by saying yes in French. That was my first thought, too. But I guess what we've got here instead is an affidavit from the court reporter that says, oh, it was a typographical error. I meant to type yes. Have I got the facts right? Yes, Your Honor. And you agree the juror said yes? Well, I don't know. I mean, we have the court reporter's affidavit that she made a typo. So assuming that's correct, it was not run by me before it was included in the government's excerpts. And I don't think the district court judge signed off on it, which the Ninth Circuit ruled. Is there any reason if the – I have no reason to doubt it. I just know that the usual procedure for augmenting the record and correcting it wasn't followed. If we agree with you on that, is there any reason we just shouldn't have a footnote that augments the record with it? I have no problem with that. In fact, I think this court can sua sponte do that, that the rules allow you to do that, too, so it can be corrected in that way. As you know, this is a case involving an illegal reentry following allegedly a conviction for an aggravated felony against a 34-year-old man at the time of his deportation. So he is now 38, a Mexican national, not very articulate, obviously not fluent or even very conversant in English. He arrived in the district court and in the immigration court below ill-educated, apparently, a native Spanish speaker. He had been 20 years in the United States since the age of 14. He had been a permanent resident alien for 10 years, so he had legal status here. He was stripped at a hearing in December – I'm sorry, in June of 2001 of that long-term permanent resident alien status. He was deported for life and barred from reentry. He was denied any right – in fact, the immigration judge told him he was not eligible to apply for discretionary relief, which would have allowed him to retain his permanent resident alien status, avoid deportation, and stay in this country. He was then, after he reentered, charged, prosecuted, and convicted for that illegal reentry. And at the end of that prosecution, he was given a nearly quadrupled prison sentence based on a mistake. The entire proceeding from start to finish was based on a mistake of law by the immigration judge. The immigration judge wrongly concluded that Mr. Trejo had been convicted of an aggravated felony, and it was that conviction that barred him from seeking discretionary relief where he could have remained in the country. To be precise on that point, when the immigration judge said that, he was correct under the extant law, right? No, I don't believe so. There was no extant law except for Taylor v. United States, which was the source of every analysis that every immigration judge is required to conduct to determine whether a state conviction actually qualifies as an aggravated felony. That analysis was not done here. I understand that the immigration judge – well, I don't know, actually, if he even knew about the first panel decision in Corona Sanchez. I don't know that. He took the word of whoever in the immigration service filed that notice to appear, which alleged that this was an aggravated felony. I can see no independent inquiry was made at any time. Even if he had, however – Was there another conviction on his record? He had other convictions on his record. None of them were aggravated felonies. So none of them would qualify as an aggravated felony? That's right. Not one of them could be – well, not one of them could be used to bar him from eligibility to apply for discretionary relief. And that's extremely important because the Supreme Court has held that that's mandatory due process in an immigration hearing, that if there is eligibility, an alien has to be advised of that or the whole proceeding is invalid. He was not advised of that here. Now, I say also that I don't know that it matters that the Corona Sanchez panel decision was out there, partly because it wasn't a final decision. It was pending a petition for rehearing. It had not been made final. And, in fact, the petition for rehearing was granted and then an en banc decision issued, which said clearly that in Corona Sanchez that that petty theft with a prior – in fact, it says even petty theft, as well as petty theft with a prior, cannot qualify as an aggravated felony, the California statute, because it's overbroad. It all depended on Taylor. If I understand this right, in order to accept your argument, we have to accept that it is plain error, subject to reversal even when there's no objection, for an immigration judge to follow a panel decision of the Ninth Circuit. If the mandate has not issued and subsequent to the immigration judge's ruling, an en banc rehearing overturns the panel decision. Have I got that right? Well, I don't know that plain error is the standard here. I'm – what I have in mind as I talk to you – And at the time? Well, what I have in mind as I speak to you is the Poyaris-Gallon decision, which tracks this case practically fact for fact and procedure following procedure all the way through. And in that case, the immigration judge, there had been no decision whether the underlying conviction was an aggravated felony. There was nothing except a Board of Immigration Appeals decision finding that. So there was some precedent and authority which bound the immigration judge there. He applied that. And in applying it, found it to be an aggravated felony. Well, the Ninth Circuit came in in Poyaris-Gallon afterwards and said, no, the immigration judge had to make an independent evaluation under Taylor. Taylor doesn't support that. And we're going to find that his due process rights were violated. And the Ninth Circuit in that decision used a de novo standard of review, not plain error. The immigration judge's advisement to Poyaris-Gallon in that case also happened Poyaris-Gallon, P-A-L-L-A-R-E-S hyphen G-A-L-L-N. The immigration judge, I'm sorry, the Ninth Circuit also found, you know I have a T-shirt that I wear now these days that says, I let my mind wander and it never came back. Right now I'm feeling that way. In my town, the T-shirt that's popular is a reasonable doubt for a reasonable price. Well, mine causes me. If you find a large size. Oh, you want one too? I'll look for it. In any event, I urge the Court to take a very close look at Poyaris-Gallon because it does track this. Here comes my thought. It came back. The INS judges, the IJ's advisement also happened before the United States Supreme Court issued its decision in St. Cyr, INS v. St. Cyr. And the Ninth Circuit panel noted that, that the IJ did not have the benefit of that either. And nonetheless, they applied a de novo standard. And I think a de novo standard should be applied here. But if you, if for some reason you find that that's not appropriate, I think under plain error, we have the same situation. And I would refer the Court to the very recent decision in Ammaline, which I sent in as a 28-J letter. It came out after all the briefing. In Ammaline, the United States, or I'm sorry, the Ninth Circuit held, error is plain if contrary to law, at the time of the appeal. And that's in Ammaline at page 1078. They are quoting the United States Supreme Court decision in Johnson v. United States. So the authority for the proposition comes from the Supreme Court and through the Ninth Circuit. Now, from the time following, well, I'm just going to make a quick summary here. I'd like to reserve some of my time. I'm down to almost 10 minutes here. So I just want to point out to your honors that the case falls into two sort of spheres. One is the underlying deportation order. If it's invalid, the conviction should be reversed, the sentence vacated, and the indictment order dismissed because the government will be unable to prove a crucial element of the crime. That's obviously where Mr. Trejo wishes to see the Court go. Failing that, there is a second arena, which is in the sphere of the sentencing. And frankly, I see no justification in the law or facts or otherwise for the sentence that Mr. Trejo received. I think that the Court must remand this, at a minimum must remand this for resentencing, or you may not even have to do that. He is serving dead time right now without those enhancing priors. He has served the maximum sentence he could have been given under the sentencing guidelines anyway, which, of course, we all know aren't mandatory anymore. But there's no reason to think the district court judge would have given him more than that without these so-called enhancing priors, which are not, were not properly found and should not have been used. So I'll reserve my time unless the Court has any questions right now. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Shawna Yen. I represent the United States. I'd like to address the defendant's issue concerning the sufficiency of the immigration judge's advisement of rights. First of all, Judge Kleinfeld, you are correct. That is a plain error review in this case. Lars Galan used a de novo standard of review because in that case, the claim that the underlying offense was not an aggravated felony was fully briefed by the parties, and the district court even issued an opinion after this, after an oral argument on that very issue. And the only thing that was new on appeal was that for the first time, they wanted to put in writing the Taylor analysis, which they had raised orally before the district court. And the Ninth Circuit said, well, in this particular case, this is simply a new argument, not a new claim. In this case, Corona Sanchez was never raised before the district court. Taylor was never raised before the district court. The parties never had a chance to address this new claim. The district court never had a chance to make a legal determination as to whether this, the petty theft requires, was in fact an aggravated felony. Judge Kleinfeld, you are correct that the extant law at the time of the Defendant's June 2001 deportation hearing was, in fact, the first Corona Sanchez decision, a panel decision which held very clearly that the exact same crime, a petty theft with priors in California, that gave the Defendant Corona Sanchez two years of imprisonment, which exactly mirrors this case where the Defendant received two years and eight months on a petty theft with priors in California. The Ninth Circuit panel had held, after doing a full Taylor analysis, that, in fact, that this was an aggravated felony for purposes of the deportation laws. The defense says, well, there was a pending rehearing of that panel decision. Well, the relevant date here is not when the petition for rehearing was filed, which, by the way, the defense does not cite a date, nor was I able to find one. What we do know is that the Court granted rehearing en banc after the deportation hearing, and it was only when the Court granted rehearing en banc, that was in September 14, 2001, several months after the Defendant's deportation hearing, that the Court then issued the opinion that withdrew the precedential value of the first Corona Sanchez opinion. Now, the defense is saying that, well, the immigration charge should have done an independent Taylor analysis. The Corona Sanchez Court, the Ninth Circuit, had already done the Taylor analysis in Corona Sanchez 1. The I.J. would have been basically not following the law if he had advised the Defendant anything else in the fact that petty theft with priors in 2001 was, in fact, an aggravated felony. Trejo had other convictions, didn't he? He did, in fact, Your Honor. And one of those was for transportation of methamphetamine? Yes, Your Honor. Would that have qualified? Well, Your Honor, I think that it probably would have qualified, although I think that there's a little more question about whether it would have qualified now that Navidad Marcos has come down. That is why I specifically relied on another one of the convictions, which I think is a stronger case for a failure to show that his substantial rights were violated in this case, which is his first-degree attempted burglary count. And I'd just like to briefly address that. First-degree attempted burglary in California requires that there be a burglary of a dwelling or another inhabited residence and or another inhabited building. At the time that the Defendant pled guilty to his first-degree burglary conviction in 1990, he was not a lawful permanent resident. As I state in my brief, which is not contested by the defense, he did not become a lawful permanent resident until after 1990. Therefore, he was not eligible for 212C relief. Therefore, Sancerre is absolutely inapposite in this case, because Sancerre, which said that the repeal of 212C relief in 1996 does not undo a plea that was done prior to 1996, doesn't affect this case, because he wouldn't have been eligible for 212C relief in any event. So basically what my point being is that under a plain error analysis, there was no error to begin with. Even if there was error, it certainly wasn't plain because of the law of Corona-Sancerre 1, not to mention that in the in bond decision, there was a divided en banc court. Judge Kleinfeld, you joined the dissent in which you stated that you believed that doing a full-tailor analysis, petty theft of priors, fit the generic definition of theft. Whether you use the Monalpino Code definition or whether you use the Seventh Circuit's definition, which is what the majority had said. And you also believe that the full sentence should be counted, the two years should be counted, even though, and that the recidivist portion of it should not be divorced from the underlying offense. So therefore, even if the law were Corona-Sancerre's 2, which it wasn't, still it was clear that even the Ninth Circuit has divided opinions as to whether this particular condition fell within the generic definition under tailor or not. There was no plain error, and certainly there was no, I state in my brief, and I won't repeat it here unless you want me to, that Corona-Sancerre's 2 should not be applied retroactively to undo this defendant's deportation. Under Alvarengo-Villabose and Cleave v. Hill, it's clear that there is no retroactive application of a change in the law to undo the finality of a deportation. And the defendant really cites no cases whatsoever to counteract that, that point. Kennedy, we move to sentencing? I'm sorry? Can we move to sentencing? Yes, of course, Your Honor. Isn't there a Shepard problem with the 12-level enhancement? Your Honor, I'll address the Shepard issue. I think that the Shepard issue, which follows along the line of the case of Almendar's Torres, is one of the reasons why I believe this case may fall within that narrow category of cases that does not require limited remand under Ameline, the most recent Ameline decision. And the reason is this. I, as my 28-J letter, obviously, I have cited a number of circuit courts who have directly addressed this issue and shown that Shepard does not overrule Almendar's Torres. In fact, the very terms of Shepard itself save that particular question for another day. Now, having said that, if we look closely at the Shepard analysis, and Shepard is basically saying if you're going to do fact-finding with respect to a prior conviction, that that perhaps is something that may take it out of an Almendar's Torres situation. But in our case, what is different from our case and Shepard is this. What was at issue in Shepard, it was a second-degree burglary. And it was in the evaluation of this very generic, very broad second-degree burglary statute that the court said that the district court inappropriately looked to police reports and other things that were not officially part of the court record in determining whether, under the Taylor modified categorical approach, whether that should hold or not. In our case, we are talking about attempted first-degree burglary in California. And, you know, again, the California statute cites first-degree burglary as the burglary of a dwelling. And it is that the – it falls within that very narrow category of cases that Taylor itself recognized as addressing particularly dangerous crimes and in which there really is no problem in terms of deciding whether it's generic or not, because it's not. The district court expressed some concern about using the burglary conviction to enhance? Absolutely, Your Honor. And that is precisely why the district court downwardly departed the way it did. And, in fact, if I could just follow up on that, the reason why this is not an Ameline remand situation is that even though the district court did calculate the guidelines and did consider the guidelines as it was required to do under Booker, the way it dealt with the sentencing in this case shows that, in fact, it was doing a post – a post-Booker analysis. It calculated the guidelines, agreed it was a 16-level enhancement, 24 – level 24, category 6, 100 to 125 months, and made that analysis. Then it downwardly departed four levels. And when it did so, it did not cite any particular, you know, section of Chapter 5 of the guidelines as to why it was downwardly departing, nor did it cite anything sort of showing that it has sort of the – that the extent of the departure was supported by anything in the guidelines. Instead, it said that the court was considering the nature of the offense and the nature of the defense, formal history. I refer the Court to the excerpts of record of the appellant at page 396 that, in nature of the offense, in nature of the defense, formal history, to arrive at a reasonable sentence. And one of the primary concerns of the district court, as you point out, Judge Hawkins, is that it believed that the qualifying offense, the first-degree aggravated – aggravated burglary in this case, first-degree attempted burglary, I'm sorry, he was concerned that the defendant initially received only 6 months and that that sentence was suspended. And he thought just that it was just not reasonable to increase his sentence by 16 levels, given that circumstance. Under a recent decision in Moreno-Hernandez, have you read that? I believe so, Your Honor. If we order an ammoline remand, the defendant can opt out. What you're saying is there's – I take your argument to be there's really no need for an ammoline remand here, because if it goes back, the judge might apply a 16-level and increase the sentence. But a defendant under this recent decision has a right to say, I know the court ordered an ammoline remand, I don't want one. I understand that. I don't think that that is their position in this case. I think they actually do want a remand. What I – my position is, is that the judge didn't depart downward, right? Yes, Your Honor. He didn't really put out any reasons that, on his downward departure, there was a general statement that he made. But, you know, he may have gone – departed further downward that he not felt the pull of the sentencing guidelines. So I think we need to leave it up to him and – if that's what we're to do. And then the defendant cannot count. And I understand, Your Honor, if that's the way the panel decides to go. I understand that there's usefulness in getting that kind of clarity, that – for definite clarity from the district court. But I – what I'd like to suggest is that, in this case, that the court asked what would be a reasonable – you know, what would be the next lower enhancement that he'd be eligible for. And the government represented it would be the 12-level enhancement, and the court was satisfied with that. The court didn't then say, well, what is the next level down? The court was satisfied that if he went just down four levels – Kennedy, that was under the mandatory regime, right? That was under the mandatory regime, Your Honor. We don't know what a fair-minded judge would do with this under an advisory regime, right? That's what Ameling is all about. We can't exactly – this district court could not see into the future and realize that Booker and Ameling were going to come down, obviously. But in this particular case, he was struggling to find a reasonable sentence. He even used the word, I'm trying to find a reasonable sentence, in the record. And to the extent that he considered the nature of the offense and the nature of the defendant's criminal history in making that assessment, he basically was doing a 3553 analysis, just as Booker had required. Well, under Ameling, we don't have to guess. We can ask him. That's correct, Your Honor. Okay. I ask that you affirm the conviction of the sentence, Your Honors. Thank you. The first point that counsel for the government raised here was a claim that Mr. Trejo never raised a challenge to the deportation order on the grounds that his due process rights were violated in the district court. And that is not accurate. The record reflects the opposite over and over again. I make the references to the record in both my opening brief and in the reply brief. More importantly, it is the government that bears the burden of proof on this issue. They bore the burden of proof at the immigration hearing, at the deportation hearing, to prove and establish an intelligent and considered waiver. And they bore the burden of proof in the district court to prove the enhancements and to prove that there was a valid underlying order. Your point was pro se below? I'm sorry? Your point was pro se? Well, that's my other point. He was pro se for his trial. He was represented. He did a pretty good job for a prosecutor. You think so? He did a pretty good job. He knew that there was something wrong. He was repeatedly he wanted the records of his prior convictions. He was not given them. He wasn't given access to the law library. He asked for that twice. He had no resources made available to him. He was in lockup. Given the circumstances he was in, he knew there was something wrong. But he had two lawyers before that. I'm telling you, when I came across Corona Sanchez, I went back to Shepard's over and over and over because I couldn't believe that any confident counsel would not have filed a motion to dismiss the indictment. Corona Sanchez came out before Mr. Trejo was even charged. I was shocked that that was not done. And it was not done by either counsel. There was no motion to dismiss the indictment based on that. I think he received a terrible representation in the district court. And I'm not surprised that he wanted to go ahead on his own. But he was not particularly articulate. He certainly raised the claim. He also raised the Sixth Amendment claim. There were two or three places in the record where he specifically represented him in the district court. By name? Yeah. The Federal Public Defender, David Grunbaum, was appointed, or Grun, I don't know how he pronounces his name, represented him initially for about six months, I think, four or five months. And then a private counsel came in, Carlene Arledge. She's the one who told the judge that this was going to be a slow plea. There was nothing trialed on his behalf. But he represented himself at trial. At that point, he said, I want to represent myself, and that was on the eve of trial. So he represented himself at trial. The government bears the burden. I agree with Chutzpah involved in firing your lawyer and then saying I was denied my rights because I didn't have a competent lawyer representing me. I don't think it's Chutzpah. I think that when counsel is representing someone, they have a duty to do what they should be doing. Pre-trial, there should have been a motion to dismiss the indictment. It wasn't filed. I can see no strategic choice in that. I — it just looks to me like pure incompetence. And I'm very sorry for Mr. Trejo that that's how things were handled in district court. He would not — he would not have been convicted, he would not have been sentenced, and he would not be in prison today if that simple motion had been made, because the laws that stood at that time compelled a dismissal of that indictment, and the government would not have been able to prove the crime without an underlying valid deportation order. In Navidad Marcos, the court said, as we have noted repeatedly, the government has the burden to establish clearly and unequivocally any enhancement, any enhancing conviction, that it was based on all the elements of a qualifying predicate offense. And they found that the abstract of judgment which the government offered there was not sufficient to prove it. So in terms of sentencing issues that you went over with counsel here, the government's proof was not adequate on any of that. And I think that's very clear. The — for a waiver of appeal at a deportation hearing to be valid in Pallares Galan, the Ninth Circuit has held, the government must establish by clear and It then goes on to talk about the fact that Pallares Galan at the immigration hearing wasn't represented by an attorney, had to speak through an interpreter because he didn't speak English, and that those were factors to be considered and that they weren't, and that the immigration judge, the government did not bear its burden of proving by clear and convincing evidence that the appeal waiver at the deportation hearing was valid, even on that basis. Over and over again, the cases which I cite in the briefs keep putting this serious burden of proof on the government, and the government has failed from start to finish. Every time I turned around, the ball had been dropped again by the government on this man. Every day matters to him. He's, as I said, serving dead time now. I really urge this Court, whatever relief it's going to craft, which I hope is going to be dismissal of the indictment, but if it is not, that whatever relief gets crafted be crafted speedily and in a way that's not going to send us back to the district court and then back up here again and then back to the district court, it's not fair to Mr. Trejo, after all this time and everything that's gone on, to sit in custody in federal prison again when the district court would not be sentencing him to anything like this kind of term, and he's done his time. The three prior convictions he has, which the government maintained all the way through, were aggravated felonies. Not one of them is a valid enhancing prior. And there is on point, clear United States Supreme Court and Ninth Circuit authority that says that. 11379. What more do you need? I mean, you're likely to get your amyline remand under our existing authorities, and the law has been clarified on the nature of aggravated felonies as it relates to these priors. But what more do you need? The judge is going to be able to look at all that, resentence, if he wants to. I'm not clear what you're asking, Your Honor. What more do we need? Is there anything that is going to matter to this case as a practical matter, except for the amyline remand? I don't think it has to be remanded under amyline. I think that Your Honors can find that not one of those aggravated felonies, first of all, I hope that you will find that specifically, that not one of them qualifies as an aggravated felony and they cannot be considered in the sentencing in that way. I understand the sentencing guidelines are discretionary now, but still district courts are directed to look to them for guidance. And still the enhancing convictions and the power they should have sits there before the district court judge. I think if it's going to go back for resentencing, it should go back with clear directives that those do not qualify. Nothing the government put on as its proof in the case established any one of them, and the law doesn't support it. So at a minimum, he should go back there on a clear record, free of any enhancing priors, if it's going to be a remand. And I just would hate to see more error happen below, and more time have to be spent on a second appeal and back up here again. So the more clear the instructions to the district court can be, the better certainly for Mr. Trejo. The sentencing judge clearly handled this as a mandatory matter under the sentencing guidelines. If you have any question about that, I'll go and cite to you all those places in the record where he says over and over again at the sentencing hearing of February 23rd that under the sentencing guidelines, this is how I'm going to calculate it. This is what the sentencing guidelines require. You can't attack your prior convictions under the sentencing guidelines. I have to consider your prior convictions under the sentencing guidelines. It's so clear that the district court judge felt constrained by the guidelines and followed that. In the Amarillo line decision, the Ninth Circuit also made an important statement, which was that it is unjust. It's simply an injustice for someone to be sentenced unlawfully, and as well as for an innocent person to be convicted. I think both happened in this case. And I really urge you to reverse this conviction, order dismissal of the indictment, at a minimum, remand it for a fair sentence. Thank you, Your Honor. You're a very good advocate and a lawyer. Thank you, Judge Ferguson. And so is the government. I've earned. What? I've earned this gray hair, huh? Well, it's a mark of distinction. Thank you, Your Honor. All right, the matter will stand submitted, and the court will, that concludes our calendar, and we'll recess until 9 a.m. tomorrow morning. Thank you very much. The court will recess and stand adjourned.
judges: Pregerson, Kleinfeld, Hawkins